# In the United States District Court
# for the Southern District of Georgia
# Waycross Division

| | |
|---|---|
| DOUGLAS ENERGY RELIEF ASSOCIATION (D.E.R.A.), TONI DES'HAZOR, ANNIE PEARL BLACK, VERA FREEMAN, and EDWARD FREEMAN,<br><br>Plaintiffs,<br><br>vs.<br><br>CITY OF DOUGLAS, GEORGIA, DENNIS JOSEY, RONALD L. HENDERSON, TONY PAULK, JACKIE WILSON, OLIVIA PEARSON, ROBERT MOORE, JR., PAUL ELLIOTT, JOHNNY LEE ROPER, SR., and OSCAR STREET<br><br>Defendants. | CV 510-083 |

## ORDER

Presently before the Court is a Motion for Summary Judgment filed by Defendants. See Dkt. No. 28. For the reasons stated below, Defendants' Motion is **GRANTED**.

## BACKGROUND

In this suit, Plaintiffs allege that the City of Douglas fraudulently inflated the electrical usage rates for African-American residents, forcing them to pay excessive amounts for electricity. See Dkt. Nos. 1, 61. Plaintiffs contend that,

while the rates were the same, African-Americans paid significantly more because their kilowatt usage was fraudulently inflated by Defendants. See Dkt. Nos. 1, 61. Thus, the crux of Plaintiffs' claims is that their actual electrical usage (the number of kilowatts they in fact used) differed from the electrical usage reported in their utility bills and that discrepancy was because of their race.

Earlier, this Court denied Defendants' Motion for Summary Judgment due to the cursory nature of both parties' briefs on the matter and ordered supplemental briefing to allow the parties an opportunity to support and clarify their positions. See Dkt. No. 59.

In that Order, the Court noted that Plaintiffs "had[d] presented absolutely no evidence that any disparity in electricity expenses was because of the consumers' race." Dkt. No. 59. The Court warned that "[e]vidence that Defendants overcharged African-Americans for electricity because of their race is essential to Plaintiff's claims; evidence that there is a disparity is not enough." Dkt. No. 59.

Plaintiffs filed their supplemental brief and presented additional documentation. See Dkt. No. 61. In the supplemental brief, Plaintiffs indicated they intended to proceed with five claims. See Dkt. No. 61. Plaintiff identified these five causes of action as (1) "Constitutional Violations including the

Civil Rights Act of 1983 and Title VIII of the Civil Rights Act of 1968;"[1] (2) "Fraud and Misrepresentation;" (3) "Breach of Contract;" (4) "Negligence;" and (5) "Intentional Infliction of Emotional Distress." Dkt. No. 61. Plaintiffs attached as exhibits to their supplemental brief 1,947 pages of documents. See Dkt. No. 61, Exs. 1-26.[2] The vast majority of those pages consist of utility bills sent to various individuals for various different billing periods and letters sent from Plaintiffs regarding their allegations of discrimination.

Defendants also filed a supplemental brief in support of their Motion for Summary Judgment. See Dkt. No. 62. Defendants mainly reiterated their earlier arguments. See Dkt. No. 62. Both parties are represented by counsel.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The court must view the evidence and draw all inferences in the light most favorable

---

[1] Violations of federal statutes are not constitutional violations. However, the Court interprets Plaintiffs' first cause of action as a 42 U.S.C. § 1983 claim asserting violations of the Constitution and federal statutes.

[2] Some of Plaintiffs' attachments are titled with exhibit numbers that do not correspond with the exhibit numbers reflected in the docket. Thus, the docket system's exhibit twenty refers to a document titled by Plaintiffs "Exhibit 18 Roy Wadley Report." All citations in this Order refer to the exhibit numbers generated by the docket system.

to the nonmovant. <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 157-59 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-24 (1986). To discharge this burden, the movant must show the court that there is an absence of evidence to support the nonmoving party's case. <u>Id.</u> at 325. The burden then shifts to the nonmovant to go beyond the pleadings and present affirmative evidence to show that a genuine issue of fact does exist. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 257 (1986). A mere scintilla of evidence in support of the non-movant is insufficient to defeat a motion for summary judgment. <u>Id.</u> at 252. Rather, the plaintiff must present "evidence on which the jury could reasonably find for the plaintiff." <u>Id.</u>

### DISCUSSION

Central to all of Plaintiffs' claims is proof that the kilowatt usage reported on Plaintiffs' utility bills was incorrect and that such information was improperly inflated because of Plaintiffs' race. Plaintiffs cite in their supplemental brief several pieces of documentation Plaintiffs presumably believe indicate discrimination. Upon reviewing—page by page—the specific documents cited by Plaintiff, the Court concludes that Plaintiffs have utterly and completely failed to support their allegations with evidence.

## I. Federal Claims

Plaintiffs' supplemental briefing seems to indicate that Plaintiffs wish to proceed with a 42 U.S.C. § 1983 claim for violations of the Equal Protection Clause and certain provisions of the Fair Housing Act, namely 42 U.S.C. §§ 3604-05. See Dkt. No. 61.

As a threshold requirement, to recover under § 1983, the conduct complained of must have been committed by a person acting under color of state law. See Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 924 (1982). Defendants' counsel argues that the "under color of state law" requirement has not been satisfied. Defendants' counsel cites numerous cases dealing with the issue of when a private entity acts as a state. See Dkt. No. 62 (citing Gorenc v. Salt River Project Agr. Imp. & Power Dist., 869 F.2d 503 (9th Cir. 1989); Jackson v. Metro. Edison Co., 419 U.S. 345 (1974); Burton v. Wilmington Parking Auth., 365 U.S. 715 (1961); Carlin Commc'ns, Inc. v. Mountain States Tel. & Tel. Co., 827 F.2d 1291 (9th Cir. 1987)). All defendants in the present case are either governmental bodies (the City of Douglas) or governmental officials. Thus, this case is readily distinguishable from the cases cited by Defendants' counsel involving private organizations. The Eleventh Circuit has indicated that a division of a city "clearly satisf[ies]" the state action requirement for a § 1983

claim. See Kearson v. So. Bell Tel. & Tel. Co., 763 F.2d 405, 406 (11th Cir. 1985). Accordingly, Defendants' counsel's state action argument is unpersuasive.

"[T]o establish an equal protection claim, a plaintiff must demonstrate that (1) 'he is similarly situated with other persons who received' more favorable treatment; and (2) his discriminatory treatment was based on some constitutionally protected interest such as race." Jones v. Ray, 279 F.3d 944, 946 (11th Cir. 2001) (quoting Damiano v. Fla. Parole & Prob. Comm'n, 785 F.2d 929, 932-933 (11th Cir. 1986)). Likewise, to establish a disparate treatment claim under the Fair Housing Act, a plaintiff must demonstrate he has been treated differently than similarly situated people outside of the protected class. Schwarz v. City of Treasure Island, 544 F.3d 1201, 1216 (11th Cir. 2008); see also Gallagher v. Magner, 619 F.3d 823, 831 (8th Cir. 2010) ("Disparate-treatment claims under the [Fair Housing Act] are tested under the same framework as Title VII disparate-treatment claims," which requires comparison of similarly situated individuals).

The evidence closest to what Plaintiffs would need to establish disparate treatment is a chart with two columns purporting to compare the utility costs of twenty-six African-American public housing residents to the utility costs of twenty-one Caucasian public housing residents. See Dkt. No. 61,

Ex. 22 at 000331-HUD-FOIA-DERA-000334-HUD-FOIA-DERA (titled "Exhibit 21 Part of HUD Investigation"). Elsewhere in the record, Plaintiffs have indicated that they acquired the information on Caucasian public housing residents from Freedom of Information Act ("FOIA") requests. See Dkt. No. 34, Ex. 2; Dkt. No. 61, Ex. 20. According to the chart, the utility costs of the Caucasian residents of the public housing authority ranged from $271.35 to $30.16 whereas the utility costs for the African-American residents of the public housing authority ranged from $567.67 to $173.35. Dkt. No. 61, Ex. 22, 000333-HUD-FOIA-DERA.

This evidence, however, is insufficient. Plaintiffs have failed to demonstrate to the Court that the Caucasian public housing residents were similarly situated. Some public housing residents whether Caucasian or African-American might have similar living quarters in terms of size and energy efficiency. The chart, however, does not contain any information about a multitude of other factors that would indicate the two groups were similarly situated. The chart does not identify whether both groups live in the same housing development. The chart does not include the billing period for the representative bills. Elsewhere in the record, Plaintiffs indicate that all the Caucasian public housing resident bills obtained through the FOIA request were bills due on February 16, 2005. See Dkt. No.

61, Ex. 20, 7-8. The Plaintiffs, however, indicate that the representative African-American's bills are dated from numerous different billing periods and mostly from 2004. See Dkt. No. 61, Ex. 22, 000336-HUD-FOIA-DERA.

Plaintiffs have not cited a shred of evidence indicating that the Caucasian comparator's *actual* usage (rather than the usage rate indicated by the bills) was similar to the African-American's actual usage. A finder of fact, on the limited information provided by the chart, could not extrapolate to find that the only relevant (or even a relevant) difference between the twenty-one Caucasian individuals and the twenty-six African-American individuals was their race.

The other evidence cited by Plaintiffs falls even shorter from the mark. Plaintiffs contend that a document identified as a "DERA Billing Spreadsheet" reveals that residents of predominantly African-American wards "were charged significantly higher amounts for electrical services than residents of" predominantly Caucasian wards. Dkt. No. 61, at 5 n.2. The actual spreadsheet, which spans approximately 240 pages, does not support that assertion. See Dkt. No. 61, Exs. 17-19. The spreadsheet contains the account numbers, street addresses, names, and billing information for DERA members from different billing periods. Columns in the spreadsheet indicate the reported usage and total bill amounts for the billing periods

listed.  The spreadsheet does not indicate in which ward the individuals reside or the individual's race.  Thus, by viewing the spreadsheet, it is impossible for the Court to compare African-American usage rates (actual or reported) to Caucasian usage rates.

Plaintiffs state "[a]n analysis of 1331 electric bills obtained by DERA for the period of 2005, confirmed that DERA members were charged the average usage of 1534 killowatts per billing cycle, which is significantly over the national average of 928." Dkt. No. 61, at 6.  As support, Plaintiffs cite generally Exhibits 2 through 15.  Those exhibits, which total over a thousand pages, consist mainly of an unorganized collection of power bills from the City of Douglas to various individuals for various billing periods.  Even assuming those exhibits supported that assertion, that figure does not indicate that Plaintiffs' usage rates were fraudulently inflated.  There is no information to indicate how residence size, climate conditions, energy efficiency, and other factors compare between DERA members and the average United States citizen.

Plaintiffs' supplemental brief also asserts that "[i]n addition to the higher kilowatt usage, on the average, in 2005, residents of Wards 2 and 3 paid $291.23 per month for electrical services based on the DERA analysis versus the $100.00 per month average that the City resident paid" and cites a news article as

authority. See Dkt. No. 61, at 6-7. First of all, the actual newspaper segment cited, which concerns DERA's legal actions, says "Freeman[, one of the plaintiffs,] has stated that African-American customers pay an average of $450 per month in utility bills, while white customers pay in the neighborhood of $68 per month." Dkt. No. 61, Ex. 16. Again, that quote conveys no information as to whether the two groups are similarly situated with regard to actual utility use.[3]

> Plaintiffs' supplemental briefing states:
>
> Defendants opine that the variables of home quality and poor insulation explain the disparity in electrical usage. However, expert witnesses for the Plaintiffs Roy Wadley and Willis Papillion indicate the improbability of that theory.

Dkt. No. 61, at 10-11. Such evidence would indeed help Plaintiffs' case. However, neither expert witness makes any such statement. Wadley's "Expert Witness Testimony Report" contains no information as to how "home quality and poor insulation" would impact electrical usage. See Dkt. No. 61, Ex. 20. Likewise, Papillion's conclusions solely concern alleged flaws in the Housing & Urban Development (HUD) investigation. See Dkt. No. 61, Ex. 25.

Plaintiffs aver that African American residents were discriminatorily charged power adjustment charges. Plaintiffs

---

[3] Presenting the newspaper article at trial to prove the truth of those figures would raise obvious hearsay issues. See United States v. Baker, 432 F.3d 1189, 1211-12 (11th Cir. 2005).

have not explained what a power adjustment charge is or why it was not properly charged to some individuals. Many of the DERA member's utility bills submitted to this Court do not include such a charge. See, e.g., Dkt. No. 61, Ex. 2, 000670-HUD-FOIA-DERA-000684-HUD-FOIA-DERA.

In sum, Plaintiffs' supplemental briefing fails to identify for the Court evidence to support their allegation that Defendants inflated the electrical usage of African-Americans. They have not identified any evidence regarding whether the usage amounts reported in DERA member's utility bills differed from their actual usage. Nor have they identified any evidence from which a finder of fact could infer that Plaintiffs were treated differently than other individuals who were similarly situated. The closet Plaintiffs have come to identifying such evidence is a chart which shows that twenty-one Caucasian public housing authority residents had lower bills than twenty-six African-American public housing residents. However, the chart gives no information as to the billing periods used, the actual electrical usage of those individuals, or any other information touching on whether the comparators were similarly situated.

## II. State Law Causes of Action

Plaintiffs' other causes of action are all predicated on racial discrimination on the part of Defendants. Plaintiffs' fraud and misrepresentation claim is based on the alleged

fraudulent manipulation of Plaintiffs' kilowatt usage. Likewise, the breach of contract claim involves Defendants' supposed bad faith in willfully inflating kilowatt usage for African-American consumers. Plaintiffs aver that Defendants are liable for gross negligence because "Defendants have perpetrated fraudulent conduct, misrepresentations, violations of Plaintiffs' civil rights, breach of contracts, intentional bad faith dealings, and violations of fair housing laws." Finally, Plaintiffs' intentional infliction of emotional distress is based on discriminatory billing. Without evidence that Plaintiffs' electrical usage was improperly inflated, Plaintiffs' state law claims fail.

## CONCLUSION

The Court has given Plaintiffs more than ample time and opportunity to come forward with proof of their claims. The poorly organized, incomplete, misidentified, and largely inadmissible stack of articles, bills, and allegations falls woefully shy. Based on the foregoing, Defendants' Motion for Summary Judgment, Dkt. No. 28, is **GRANTED**. The clerk of court is directed to enter the appropriate judgment and close the case.

AO 72A
(Rev. 8/82)

**SO ORDERED**, this 30th day of July, 2013.

/s/ Lisa Godbey Wood

LISA GODBEY WOOD, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA